We're going to move on to the second argument on the calendar, that's the United States versus Belinda. Mr. Barquette, are you there? Uh, good morning, your honors. Yes, I am. Oh, clear as a day. That's good. I can hear you and see you. And Mr. Krause, are you there? Yes, your honor. Good morning. Okay, same for you. So that looks like we're up and running. So Mr. Barquette, you have reserved three minutes for rebuttal. So you'll have seven minutes to start. So the floor is yours. Very well, may it please the court. Good morning, everyone. Mr. Krause. Your honors, this is a fairly simple matter, I think, that the defendant wanted the benefit of his bargain, and he did not get it. He was promised, among other things, that the government's view of the two-level enhancement for a maintaining a premises for exclusively for the use of manufacturing drugs would not be applied, and they would support the defense in that position. Ultimately, while they made some arguments towards that at the sentencing hearing, they were asked a straightforward question by the court whether or not they believe that they would not be able to prove by preponderance of evidence the enhancement. And rather than simply asserting their position, which they had agreed to, and say, no, judge, we can't prove that, at which time it seems, from the record, that the court would have concluded that the enhancement would not have applied, and the guidelines would have been reduced substantially. And presumably, the judge would have taken that into account and sentenced Mr. Belinda to less time than he received. So a substantial right was affected. It is that simple. That answer to that one question, the court says, unless the government wanted to tell the court, they do not believe they could prove by preponderance of the evidence that the defendant maintained the premises for the purposes of manufacturing controlled substance. Prosecutors answered, no, I'm not prepared to tell you that, your honor. Yes, that's exactly right. He's an officer of the court, or he or she is an officer of the court. There was some evidence with regard to the eligibility for that, and Judge Castell raised it. The prosecutor initially said, we don't think that he qualifies for it. We think it's close, but we don't think he qualifies for it. Is the prosecutor supposed to just say, no, I won't prove it? Or the prosecutor knows what evidence they have, and he knows what the standard is, preponderance, right? Yes, no. Clearly, the prosecutor in good position that it believes is correct, but they have to stake it out in terms of the plea agreement. They can't take both sides of the issue. They can't say to the defendant to induce a plea, we won't seek this enhancement because we don't believe it applies. Let me ask you this. If we agreed that the enhancement does apply from the record and the calculation, does your argument go away? No, Your Honor. One of the cases that I was not cited in our brief, but I ran across this morning and I forwarded to Mr. Krause was Santabella versus New York. It's an old Supreme Court case that's similar to this. We're entitled to the benefit of our bargain. We're entitled to the prosecutor to keep its word. You can't induce a guilty plea, especially one where the rights and the amount of time in prison is substantial as this, induce a guilty plea by making promises. Then when the rubber meets the road, so to speak, say, well, no, we were only kidding. The plea agreement expressly contemplated situations in which the court was going to ask questions. In fact, it allowed the government to answer questions and make arguments in light of inquiries made by the court. Isn't this exactly what was bargained for? Yeah, exactly, Your Honor. But the answers to the questions need to have been consistent with the position they staked out when they negotiated and induced the guilty plea. They can't induce the guilty plea by saying, here's what our position is with respect to maintaining this premises. And then when the court asked them the very same question, answer it differently. They need to be consistent. Whether or not. But the colloquy indicates that the government agreed to stand behind the plea agreement. It said that it thought the enhancement was not appropriate. It was only when the court pressed, well, what did he do? What did he do to control this property? And it came out that, well, he provided some security. And I guess the issue is whether that's enough to justify the enhancement. But the facts that you're not quibbling with the government answering a factual question, right? No, the factual questions I'm not quibbling with at all. And in fact, the answer to the question that you just raised is he never provided security. He talked about it, but there was no security provided. We all everyone conceded that the question that the government answered that amounted to the breach was when they said that they would not be able to essentially saying telling the court they could prove by preponderance that the enhancement applies. They said it in the negative, but that's the gist of what they said. In that instance, they pulled the rug out from underneath the defendant and vitiated all the really about why the enhancement shouldn't be made and basically said to the court, no, we think it should be made. We think it should apply, excuse me. And in doing that, they breached the agreement with the defendant. We didn't get the benefit of our bargain, Mr. Where did they say it should apply? They answered a question about proof. Well, they didn't. They didn't. Well, wait a second. Now, wait just a second. Did they recommend you show me the record where they said they recommended the enhancement apply? No, your honor, you're correct. They didn't stay. Okay. So you misspoke? Well, no, I, I, it's, I paraphrased what they said was, we're not prepared to tell the court that we can't prove it by a preponderance of the evidence, which is the corollary to saying we can prove it. It's a question. Wait a minute. Can I interrupt there? I'm sorry, Mr. Parkett, you're getting it from all sides, but ordinarily it's the government's burden to establish the is asked, are you prepared to prove this by a preponderance of the evidence? And they say, we're not prepared to tell the court that that basically means they haven't met their burden, right? That's correct. So is it the government here telling the court? We're not sure whether we can meet our burden. We're not prepared to tell you that we can or can't establish by a preponderance of the evidence. The answer to the question in our view that would be consistent with the spirit and the letter of the agreement was no, your honor, we can't prove it. We can't prove by a preponderance, although it's a close question. If the answer to the question was, well, we think we can, which is what they implied to the court and which is what led the court ultimately to find that the enhancement applied, then they should have staked out that position in the plea negotiations with the defense council with us. But this is helpful because it seems to me that you're saying that if they had answered no, they'd be complying with the agreement, but answering we're not prepared to tell the court that is a breach, right? Uh, yes, your honor. Clearly. All right. Okay. Okay. I think my time is up, so I'll yield. Uh, all right. You've reserved three minutes, so thank you. We'll now hear from Mr Krauss. Thank you, your honor, and good morning. May it please the court. My name is Michael Krauss, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, also represented the United States below. This appeal should be dismissed because the defendant received a sentence within his appeals waiver range and because the government did not breach its agreement. Alternatively, the judgment should be affirmed because Judge Costell's application of the premises enhancement was not procedural error. The defendant claims for the first time on appeal that his appeals waiver is unenforceable because the government breaches the agreement. There's no dispute that the defendant knowingly waived his right to appeal any sentence below 87 months and that he received 72 months. The record also makes clear that the government did not breach the agreement. In Riera, this court cited to three factors in finding no breach. First, that the government responded to a specific inquiry of the district court. Second, that the plea agreement allowed for such a response. Third, that the government did not advocate for anything that would have breached the agreement. And all three factors support the same result here. As to the first factor, at sentencing, the court specifically asked about the two-level increase for maintaining a premises. The government stated that we stood behind the plea agreement and that our position was that the enhancement should not apply. The court then asked certain factual questions, which we answered truthfully and as to which there was no real dispute. A meth lab was built on the defendant's property. The defendant was in the property. This court has observed repeatedly that answering questions raised by the court standing alone is not a breach of the agreement. Second, these answers were expressly permitted by the agreement, which stated that the parties reserved the right to answer any inquiries from the court regarding the court's own calculation of the sentencing guidelines. Third, the government never advocated for the enhancement and instead asked the court which it did. The record is clear that the government did not seek to influence the court in any way incompatible with the plea agreement. The defendant also cannot show any negative effect on his substantial rights. The court's decision to apply the enhancement was independent of any alleged breach by the government. The court also sentenced the defendant close to the bottom of the stipulated guidelines range by sentencing him to 72 months. Because there was no breach of the plea agreement, the appeals waiver should be enforced and the appeal dismissed. Even if the appeal is not dismissed, however, the judgment of conviction should be affirmed because the district court committed no procedural error in applying the enhancement. There's no dispute from the defendant that he owned the property where the meth lab was built. He did not surrender his leasehold interest in that property. He agreed to provide security for the lab and that precursor chemicals for the production of methamphetamine were found on the property. In light of these facts, Judge Costell did not err in applying the enhancement. Unless there are any questions from the court, the government will rest on its submission. Mr. Krause, you might check with your IT people. Your argument, at least as I receive it, the sight and sound are out of sync. I'm not sure it's on your side or my side, but it's worth checking because it's a little distracting. Yes, you are. I'll check into that. Thank you. Thank you, Your Honors. Thank you, Mr. Krause. Mr. Barkett, you have three minutes of rebuttal. Thank you. Briefly, to address really the three points that Mr. Krause raised, which is the appeal waiver, of course, applies to the range, but once the prosecutor breaches their agreement, we're allowed to appeal from it anyway. Our argument is not that he was sentenced outside of the range or that the waiver doesn't apply generally. It's that because of the prosecutor's breach, we're then free to file the appeal, so it should not be dismissed. And the breach clearly happened in our view. Mr. Krause, I don't think was at the sentencing hearing. A co-counsel handled it. I was there. We were stunned when the prosecutor, we got to that final question and the judge asked, are you telling us you can't prove this? And it was clear that if the prosecutor said, yes, that's what I'm saying, the enhancement would not have been applied. At least that's a fair reading of the record. And that was certainly our subjective impression at the time. Instead, the prosecutor said, no, that's not what I'm saying. We can't say that. And then the judge applied the enhancement and a substantial right was affected because the guideline range was off by a substantial amount. So that's one of the factors the judge has to take into consideration when sentencing the defendant. And he sentenced him to 72 months, which was 15 months below the minimum of the guideline range that he found. If he had sentenced him to 15 months less the minimum range of the guidelines that we agreed to, Mr. Belinda would have received 55 months instead of 72. Was there a disagreement about, I mean, was there a disagreement as to facts that were before the court? No. But there was a disagreement as to a legal conclusion, right? And the court expresses a view that it thinks, which you disagree with, that the enhancement didn't apply. And then he turns to the prosecutor and says, I mean, what if it played out this way? The judge says, look, you don't think it applies and you don't think it applies. I do. I think these facts add up to the enhancement. And then he turns to the prosecutor and says, are you telling me you can't prove it according to my understanding of the enhancement? Would that be a breach? Well, my understanding of the enhancement, we all agreed upon what the facts were. There was a guilty plea here and there was not a factual. But sometimes, yeah, but sometimes people, the lawyers disagree with the judge as to what, whether one on one equals two, sometimes they think the result is different, right? Look, we don't know for sure what would have happened had the prosecutor answered the question in the way that the plea agreement indicated they would, which is we can't prove this. But the reading of it and being in the courtroom, it seems that the judge would not have applied the enhancement. Well, what would you have had the prosecutor? He seems to me to have been. In fact, you're so certain that he that he would have that you don't want it to go back to him. Notwithstanding, your last sentence says to send it to another judge because you don't think he could be fair. Judge Castile could be fair. But let's put that aside. What if he just said, look, I think it does. And you guys don't think it does. And but are you are you prepared, Mr. Prosecutor, to prove the facts that that you've all agreed to in the on the submissions to me? And if he's he or she says yes, is that a breach? Well, no, if the prosecutor had kept the agreement and the judge had said, well, I appreciate what you're saying and I appreciate that both parties agree and that you don't think it can be approved. We disagree and applied it anyway. Well, then we'd be within four corners of the agreement. That's not what happened. What happened was the prosecutor at the end literally pulled the rug out from under us and by answering by answering that they could prove it, according to Castile's understanding I mean, they changed their definition. They they they said it was close, right? They did say it was close, which was part of the discussions in the plea. And they said it was not appropriate. I didn't think they said it was a close call and not appropriate. But when asked if they could prove it, look, that that those three or four sentences at pages, I think, a 364 and a 365 of the record are the sum total of the breach. Had they said, yes, judge, that's exactly what we're saying. We can't prove this. The judge would not have applied it. And well, wait a sec, you know, I mean, that that would have been clever to try and cut a judge off. But I'm not so certain that a judge would be precluded from what a prosecutor's conclusion was with regard to whether they could or they couldn't prove it. Right. Absolutely, judge. And it's not it's not I can't predict what Judge Castile would have done had the prosecutor kept their plea agreement, but they didn't were entitled to the benefit of the agreement. And as a result of that, you you would agree with me that the judge was not bound by the prosecutor's estimate of what he or she thought they could prove. Absolutely. Judge, the prosecutors are bound to keep their plea agreement. And that's the albeit somewhat late. I ran across Sanibello, which is very similar in some respects. OK, thank you very much. Thank you. All right. Will reserve decision. Thank you both. Well argued. And good to see you as a prosecutor. Great. Say hello to Ms. Aldea for me, Mr. Marquette. I will indeed, Judge. I will indeed. I remember finally from my days at the New York Court of Appeals. I will mention that to her. She'll appreciate it. OK, bye bye. Thank you.